UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROLANDO HERNANDEZ PEREZ,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, ET AL.,<br>Respondents. | CASE NO. 2:26-cv-03897-JHC<br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Rolando Hernandez Perez's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 1.

## II
## BACKGROUND

Petitioner is a native and citizen of Mexico, who entered the United States without inspection in 2007. Dkt. # 1 at 6. He moved to Idaho Falls, working for various construction

and countertop manufacturing companies. *Id.* at 7. He has a partner and three children. *Id.* His spouse is a United States citizen, *id.*, and so are two of his children. Dkt. # 7 at 13, 15.

While driving to work on May 11, 2026, Petitioner was pulled over by agents from Immigration and Customs Enforcement (ICE). Dkt. # 1 at 7–8. He was detained by ICE, *id.,* charged as removable under Sections 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA), Dkt. # 1-2 at 11, and transported to the Northwest ICE Processing Center (NWIPC) where he remains today. Dkt. ## 1 at 9; 1-2 at 2.

On June 8, 2026, Petitioner appeared before Immigration Judge (IJ) John Odell. Dkt. # 1-2 at 4–5. Due to a technical issue, the hearing was not recorded. Dkt. # 3 at 2. At the hearing, Petitioner presented "evidence of stability and ties to the United States[,]" including his long-term residency in Idaho and his U.S. citizen children. *Id.* at 1–2. Counsel provided a record of Petitioner's several criminal convictions. Dkt. ## 2 at 4; 1-2 at 10–11. The convictions—all more than a decade old—are for misdemeanor offenses for driving without a valid license or insurance. Dkt. # 1-2 at 10–11. IJ Odell denied bond, finding he did not have jurisdiction to grant conditional release, or alternatively "[Petitioner] has not shown he is not a flight risk." *Id.* at 4. Petitioner then filed this Petition for Writ of Habeas Corpus. Dkt. # 1.

## III
## DISCUSSION

Federal district courts may grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner makes three claims. First, he contends his arrest violated the Due Process Clause of the Fifth Amendment, as Respondents "failed to comply with statu[t]es and regulations

that govern initial stops and warrantless arrests[,]" and that "the Due Process clause required a pre-deprivation notice and hearing prior" to Petitioner's arrest. Dkt. # 1 at 10–11. Second, Petitioner claims that his bond hearing violated the Due Process Clause of the Fifth Amendment since "the IJ erroneously found that it lacked jurisdiction" by finding Petitioner was subject to mandatory detention under section 1225(b)(2)(A), and therefore abused his discretion. *Id.* at 11.[1] Last, Petitioner argues that the IJ's alternative finding that he was a flight risk was an abuse of discretion, as the IJ "abused their discretion by failing to engage with [Petitioner's] evidence and relied on evidence that as a matter of law cannot support a finding of flight." *Id.* at 11–12. As a preliminary matter, the parties agree that Petitioner is detained under section 1226(a), which means the IJ erred in finding he lacked jurisdiction. Dkt. ## 1 at 12; 9 at 4–5. And because the Court ultimately grants Petitioner relief on the last claim, the Court need not evaluate the warrantless arrest claim. *See Totpal v. Blanche*, 2026 WL 2731568, at *1 n.1 (W.D. Wash. Sep. 16, 2026).

On the claim that IJ Odell abused his discretion by finding Petitioner was a flight risk, Respondents only contend Petitioner has not exhausted his administrative remedies. Dkt. # 9 at 5–8. They say that Petitioner has not appealed the IJ's bond denial decision to the Board of Immigration Appeals (BIA). *Id.* at 6. Petitioner responds that exhaustion should be waived. Dkt. ## 1 at 24–27; 13 at 9. The Court now reviews whether waiving exhaustion is appropriate.

A. Exhaustion Of Administrative Remedies

For habeas claims, "The exhaustion requirement is prudential, rather than jurisdictional[.]" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). In determining

---

[1] IJ Odell's order cites *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). Dkt. # 1-2 at 4. There, the Board of Immigration Appeals (BIA) found that noncitizens without authorization detained within the United States interior are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Yajure Hurtado*, 29 I. & N. Dec. at 228–29.

whether prudential exhaustion is required, courts in the Ninth Circuit typically begin by considering the *Puga* factors. *See, e.g.*, *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011); *Rodriguez v. Hernandez*, 2026 WL 2432725, at *3 (W.D. Wash. Aug. 6, 2026). These factors are: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). But "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement" if at least one of the *Laing* factors applies. *Hernandez*, 872 F.3d at 988. Such factors are: "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Courts in this District appear split as to whether the *Puga* factors favor or disfavor prudential exhaustion where, as here, Petitioner is requesting review of a bond determination.[2] The Court proceeds to analyzing whether prudential exhaustion is excused under *Laing* given the circumstances presented here.[3] Specifically, the Court addresses whether Petitioner has shown that he will suffer irreparable harm without a waiver.

---

[2] *See, e.g.*, *Scott v. Wamsley*, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026) (concluding that the *Puga* factors support waiver of prudential exhaustion); *Smith v. Hernandez*, 2026 WL 2085853, at *2–3 (W.D. Wash. July 20, 2026) (same); *W.T.M. v. Bondi*, 2026 WL 262583, at *2–3 (W.D. Wash. Jan. 30, 2026) (same); *Calderon v. Mullin*, 2026 WL 1487774, at *2–3 (W.D. Wash. May 28, 2026) (concluding that the *Puga* factors favor prudential exhaustion); *Zuo v. Hermosillo*, 2026 WL 809882, at *2 (W.D. Wash. Mar. 24, 2026) (same); *Kim v. Mullin*, 2026 WL 948347, at *3–5 (W.D. Wash. Apr. 8, 2026) (same).

[3] *See, e.g.*, *De La Torre Ferretiz, v. Hernandez*, 2026 WL 2123037, at *3 (W.D. Wash. July 23, 2026) (concluding that the cited authority "supports either conclusion regarding exhaustion" under *Puga*

Petitioner has been detained since May 11, 2026. Dkt. # 13 at 1. Along with the self-evident harm of being separated from his family and community for almost six months, Petitioner describes detention conditions that are incontrovertibly and irreparably harmful. Petitioner describes "living in a unit with around 80 people but only having access to [six] toilets, being served raw chicken, getting sick from the food, spitting up blood, and much more." Dkt. # 1 at 10; *see* Dkt. # 2 at 5 (describing lack of natural light, soap to clean dishware, functioning sinks, and medical care). Respondents do not dispute this description of confinement. *See* Dkt. # 9. At the same time, Petitioner's absence from his family requires his spouse to obtain a second job. Dkt. ## 1 at 27; 2 at 2. To appeal the bond denial to the BIA would likely take months. *See, e.g.*, *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025), *aff'd sub nom. Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026) (noting that ("In 2024, [Executive Office of Immigration Review] data showed an average processing time of 204 days" for reviewing bond appeals); *Nguyen v. Scott*, 2026 WL 194232, at *4 (W.D. Wash. Jan. 26, 2026) (acknowledging that BIA appeals can pend for over six months).

Courts in this District have repeatedly found that requiring individuals like Petitioner to wait for BIA review while in custody "inflict[s] the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process"—and that such harm satisfies "irreparable injury" under *Laing*. *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026).[4] Thus, the Court finds that being detained in the conditions described by Petitioner constitutes irreparable injury under *Laing*, and Petitioner is

---

so proceeding directly to the *Laing* factors); *Shklyarevsky v. Ice Field Off. Dir.*, 2026 WL 1801029, at *2 (W.D. Wash. June 23, 2026) (assuming without deciding that the *Puga* factors require exhaustion and proceeding directly to the *Laing* factors).

[4] *See, e.g.*, *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) (finding irreparable injury under *Laing* and waiving prudential exhaustion based on potential for prolonged detention).

entitled to waiver of the prudential exhaustion requirement. The Court now turns to the merits of Petitioner's claim that IJ Odell abused his discretion by denying bond on a flight risk determination.

B. Abuse Of Discretion

A habeas court has jurisdiction to review an IJ's bond determination for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784–85 (9th Cir. 2024). "Under an abuse of discretion standard, [a federal court] cannot reweigh evidence . . . but can only determine whether the [IJ] applied the correct legal standard." *Id.* at 785 (cleaned up and citation omitted). And while the administrative scheme clearly "contemplates discretionary bond determinations by IJs—not federal district courts"—it is also true that "bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Calderon*, 2026 WL 1487774, at *2; *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

An IJ's flight risk determination is also reviewed under an abuse of discretion standard. *See Soriano*, 830 F. Supp. 3d at 1080. In determining whether a petitioner presents a flight risk, IJs may consider these factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 1079–80 (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). And while an IJ may discuss other factors, a citation to other factors, without any discussion of how they support a flight risk determination or why they outweigh the petitioner's evidence, is typically insufficient

to sustain a flight risk finding. *See Soriano*, 830 F. Supp. 3d at 1081; *see also Garcia Miranda*, 2026 WL 1328227, at *4 (collecting cases).

The Court concludes that IJ Odell exceeded the scope of his discretion by not applying the correct legal standard in making his flight risk determination. Based on the declaration of Petitioner's counsel for his bond hearing, nothing indicates IJ Odell factored any evidence presented by Petitioner into his denial decision. *See* Dkt. # 3. Petitioner's counsel states that IJ Odell "did not explain what he had relied on to find flight risk[,]" *id.* at 2, which constitutes an abuse of discretion if true. *See Guzman-Juarez v. Wamsley*, 2026 WL 1911506, at *4 (W.D. Wash. July 2, 2026) (finding IJ abuses discretion "by failing to provide any reasoned explanation for his bond denial in the face of substantial evidence supporting Petitioner's eligibility for bond.").

The Court has only two pieces of evidence IJ Odell is claimed to have reviewed or discussed. First, Petitioner's bond hearing counsel claims IJ Odell discussed supposed "weaknesses in [Petitioner]'s pending 42B[5] application." Dkt. # 3 at 1. Second, Petitioner claims that the "ICE attorney" told IJ Odell that Petitioner has several convictions. Dkt. # 2 at 4. But Petitioner's criminal history record shows these convictions were for non-violent traffic offenses. Dkt. # 1-2 at 10–11. Using either fact to deny bond has been considered an abuse of discretion in this District. *See, e.g.*, *Soriano*, 830 F. Supp. 3d at 1081 (finding abuse of discretion and due process violation because "[t]he IJ provided no rationale why it should be concluded that under [the] circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak"); *De La Torre Ferretiz*, 2026 WL 2123037, at *5 (finding abuse of

[5] The "42B" application refers to an Application for Cancellation of Removal.

discretion and due process violation because "a petitioner's supposedly weak claims for relief from removal cannot by itself justify a finding of flight risk without explaining how this conclusion outweighs the other circumstances of their case"); *Roberts v. Scott*, 2026 WL 2071146, at *8 (W.D. Wash. July 17, 2026) ("Courts in this district have found that IJs abuse their discretion when they base a dangerousness finding on the mere existence of past arrests for minor, nonviolent offenses without explaining how these remote arrests outweigh the overwhelming evidence of a noncitizen's good character and community ties.'") (citation modified).

Even if IJ Odell did review the evidence supplied by Petitioner, there is nothing in the record before the Court that rationally supports IJ Odell's conclusion that Petitioner is a flight risk. Petitioner has resided in the United States for almost two decades. Dkt. # 7 at 52. He has been in a domestic relationship with a U.S. citizen for a decade, Dkt. # 2 at 2, and together have three children—two of which are U.S. citizens. Dkt. ## 2 at 2; 7 at 13, 15. Petitioner has nearly 20 years of employment history, *see* Dkt. # 7 at 53, and several letters of support from his employer, friends, and colleagues. *See id.* at 80 (letter of support from employer); 48 (same from friend); 78 (same from colleague); 79 (same from colleague and friend). Petitioner's criminal history demonstrates only a decade-old series of non-violent traffic infractions. Dkt. # 1-2 at 10–11. None of these rationally indicate any flight risk. If nothing else, the fact that Petitioner had a series of traffic-related convictions without any bench warrants indicates he can promptly appear at judicial proceedings.

Respondents' Return also does not mention Petitioner's evidence or make any argument in favor of IJ Odell's flight risk finding. *See* Dkt. # 9. In fact, the Return does not even address Petitioner's abuse of discretion arguments. *Id.* Respondents even state elsewhere in their brief

that "there is no evidence that Petitioner has *ever* undergone an individualized assessment concerning his potential danger to the community or flight risk." *Id.* at 15 (emphasis added).

This Court thus concludes that Petitioner's due process rights under the Fifth Amendment were violated, thus entitling him to habeas relief.

C. Relief

Petitioner requests habeas relief in the form of immediate release, and to permanently enjoin Respondents from re-detaining him without notice and a hearing. Dkt. ## 1 at 34; 13 at 10–15. Respondents respond that Petitioner has not met his burden of demonstrating he has or will suffer an irreparable injury, and injunctive relief is therefore unwarranted. Dkt. # 9 at 18 (citing *eBay Inc. v. MercExchange L.L.C.*, 547 U.S. 388, 391 (2006)). Specifically, Respondents state that "Petitioner has not alleged any basis on which his hypothetical future re-detention would be unlawful and has not been previously subject to re-detention." *Id.*

Courts in this District have concluded that petitioners are entitled to immediate release when their due process rights have been violated because of an IJ abusing their discretion in denying bond. *See, e.g.*, *De La Torre Ferretiz*, 2026 WL 2123037, at *5 (ordering immediate release on reasonable conditions of supervision); *W.T.M.*, 2026 WL 262583, at *5 (same); *Soriano*, 830 F. Supp. 3d at 1081–82 (same). Therefore, the Court finds immediate release appropriate in this situation.

Turning to Petitioner's request of injunctive relief, the Court finds such relief is warranted when a party demonstrates: (1) that they have suffered an irreparable injury; (2) that the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc.*, 547 U.S. at 391. A party seeking injunctive relief must also show the existence of

"some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Courts in this District have granted injunctive relief in similar situations. *See Lira v. Mullin*, 2026 WL 2581908, at *5–6 (W.D. Wash. Sep. 1, 2026) (prohibiting the government from re-detaining noncitizen without providing written notice and hearing first); *Garcia Marquez v. Hernandez*, 2026 WL 2649693, at *5–6 (W.D. Wash. Sep. 8, 2026) (permanently enjoining the Respondents from re-detaining noncitizen without seven days' notice and a hearing before a neutral decisionmaker).

Certainly, nearly sixth months of detention—away from his family and community—constitutes irreparable injury. *Lira*, 2026 WL 2581908, at *5. And there is not a "monetary remedy [that] can compensate for the deprivation of physical liberty." *Id.* And since this injunctive relief only requires Respondents to comply with the Constitution, both the balance of equities and public interest favors an injunction. *Id.*

Lastly, Respondents' record of re-detaining noncitizens without due process speaks for itself. *See Garcia Marquez*, 2026 WL 2649693, at *5 (collecting cases). Given the breadth of Respondents' repeated violations, "it is well known in this District that ICE revokes noncitizens' release and detains them without process[.]" *Id.* Petitioner thus shows the requisite "cognizable danger of recurrent violation." *Id.* (quoting *Cummings*, 316 F.3d at 897).

The Court thus finds immediate release on reasonable conditions of supervision and prohibiting Respondents from attempting to re-detain petitioner without adequate notice and a hearing to be the appropriate remedy.

## IV

## CONCLUSION

For these reasons, the Court: GRANTS the petition (Dkt. # 1) and ORDERS that Respondents shall release Petitioner from detention within 24 hours of this order. Upon release, Petitioner shall be subject to reasonable conditions of supervision. The Court further ORDERS that Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate. Petitioner may move for attorney fees and costs under the EAJA. A petitioner must typically file such a motion within 30 days of final judgment. *See* 28 U.S.C. § 2412(d)(l)(B). The Clerk is directed to send uncertified copies of this Order to all counsel of record.

Dated this 10th day of November, 2026.

John H. Chun
United States District Judge